UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEONARD C. ANDERSON,

    Plaintiff                               Civil Action No. 07-14377

v.

                                          District Judge Julian Abele Cook
                                          Magistrate Judge R. Steven Whalen

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Leonard C. Anderson brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed cross motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On March 2, 2004, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), alleging an onset date of June 15, 2003 (Tr. 48). After the initial denial of benefits

on April 23, 2004, Plaintiff made a timely request for an administrative hearing, held before Administrative Law Judge ("ALJ") Patricia Hartman on November 6, 2006 in Lansing, Michigan (Tr. 349). Plaintiff, represented by Jonathan Carey, testified, as did Vocational Expert ("VE") Melody Henry (Tr. 354-372, 373-377). On February 14, 2007, ALJ Hartman determined that Plaintiff was not disabled (Tr.24). On July 10, 2007, the Appeals Council denied review (Tr. 5-7). Plaintiff filed for judicial review of the final decision on October 15, 2007.

## BACKGROUND FACTS

Plaintiff, born March 2, 1958, was age 48 when ALJ Hartman issued her decision (Tr. 48). He completed high school and worked previously as a factory worker and fast food worker (Tr. 82, 86). Plaintiff's application alleges disability as a result of lung problems, diarrhea, and Hepatitis B (Tr. 81).

### A. Plaintiff's Testimony

Plaintiff, divorced, reported that his weight had fluctuated between 211 and 167 since developing a lung condition (Tr. 354). He testified that his current source of income consisted of food stamps, adding that he divided his time between his daughter's house, a homeless shelter, and living "in the streets" (Tr. 354). He stated that since receiving a DUI (at which time his vehicle was confiscated) he no longer drove (Tr. 354).

Plaintiff denied vocational training (Tr. 355). He reported last working at a factory spraying chemicals on molding (Tr. 355). He indicated that the job required him to lift as much as 75 pounds (Tr. 355-356). Plaintiff testified that he had been fired after reporting

to work "five or ten minutes late" (Tr. 356). He indicated that he also worked at an earlier job for approximately six weeks before being terminated due to his physical limitations (Tr. 356-357). Plaintiff testified that the earlier position, also factory work, required him to lift up to 100 pounds (Tr. 357). Plaintiff also reported working for six years as a dye setter which required him to lift up to 175 pounds (Tr. 358). Plaintiff alleged that severe muscle spasms, a hernia, "chemical asthma," and sleep disturbances precluded all work, adding that in the past year he also experienced neck and right shoulder pain (Tr. 360).

Citing his physician's findings, Plaintiff testified that he would be permanently unable to lift more than 15 pounds (Tr. 361). He reported that he was unable to run or walk long distances (Tr. 361). He also noted that following a 2004 vehicle accident, spurs had been discovered on four of his spinal discs (Tr. 361). Plaintiff testified that he currently took Asthma Core, Ibuteral, and Paxil, adding that he previously took Vicodin for back pain (Tr. 362, 366). On a scale of one to 10, Plaintiff rated his pain level as "seven" at best and "eight" at worst (Tr. 362).

Plaintiff, reporting that his back pain disrupted his sleep, admitted that he "sip[ped]" between a half pint and one pint of alcohol each day to help him relax (Tr. 363). He denied using street drugs subsequent to 1997 (Tr. 363). Plaintiff estimated that he could walk up to five blocks, stand for 30 minutes, and could sit for unlimited periods if allowed to readjust his position (Tr. 364). He stated that he could lift up to 15 pounds (Tr. 364). He testified that he could squat or stoop with difficulty (Tr. 364). Plaintiff, right-handed, reported that his ability to perform fine manipulations was impaired by arm tingling and left hand pain (Tr.

365).

Plaintiff reported that he was "severely depressed," stating that prior to his divorce and the onset of his lung condition he owned a home and "had cards in my billfold" (Tr. 366). He testified that he experienced crying spells approximately once every three weeks (Tr. 366). He indicated that Paxil was of limited help, noting that he became most depressed when alone (Tr. 366). Plaintiff denied undergoing counseling (Tr. 366). He reported that he read very little, but watched television during the times that he stayed with his daughter (Tr. 367). He reported that he experienced short-term memory deficiencies and had no friends, but indicated that his sister had invited him to visit her in Chicago for Thanksgiving (Tr. 367).

Plaintiff, admitting that he continued to smoke, expressed frustration that back problems and asthma prevented him from fishing, playing basketball, and other recreational activities (Tr. 368). He also stated that he was nearsighted, but did not wear glasses (Tr. 369). Plaintiff denied problems hearing or performing personal care chores, but denied all recreational, religious, and social activities (Tr. 369-370).

In response to questioning by his attorney, Plaintiff testified that his asthma was exacerbated by dry air (Tr. 371). He stated that his physical condition was worsening, but admitted that shoulder and neck problems had been relieved to some extent by undergoing two months of therapy in 2004 (Tr. 371). Plaintiff reported that he did not experience depression until the onset of his physical problems (Tr. 372).

    **B.**    **Medical Evidence**

### 1. Treating Sources

A September 2003 x-ray of Plaintiff's chest yielded negative results (Tr. 321). October 2003 treating notes created by N. Siddigi, M.D., show that Plaintiff, a former illicit drug user, tested positive for Hepatitis C (Tr. 125). Dr. Siddigi also noted that Plaintiff's asthma was well controlled with an albuterol inhaler and Azmacort (Tr. 125). Plaintiff reported that he wanted to quit drinking (Tr. 125). In March 2004, one month after an automobile accident, Laren Lerner, D.O., found that Plaintiff was "totally disabled" from his work from March 3, 2004 until March 31, 2004 (Tr. 151, 158). Physical therapy notes from the same month show that Plaintiff reported pain upon walking, standing, and sitting for even short periods (Tr. 148). In April 2004, he reported improvement after beginning an exercise program (Tr. 140, 146). The same month, an MRI of Plaintiff's right shoulder showed "no evidence of rotator cuff tear," but indicated degenerative joint changes creating impingement along the supraspinatus tendon (Tr. 154).

Dr. Lerner's May 2004 treating notes indicate that Plaintiff experienced neck and upper back pain as well as "chemical bronchitis" and "chemical asthma" (Tr. 197). An August 2004 echocardiogram showed left atrial enlargement and ventricular hypertrophy (Tr. 203). In September 2004, Plaintiff received prescriptions for Ativan, Restoril, Darvocet, Naprosyn, Flexeril, and Zantac (Tr. 187). The same month, Thomas Sisson, M.D., evaluated Plaintiff, finding that "he may have potential cardiac dysfunction secondary to alcohol use" (Tr. 208). Dr. Sisson noted that Plaintiff continued to ingest a half pint of vodka every day and smoke (Tr. 208). In December 2004, Plaintiff complained of fatigue, weight loss,

headaches, diarrhea, night sweats, wheezing, back pain, and a depressed mood (Tr. 254). He reported that he drank a half pint of vodka daily, expressing an interest in attending an alcohol abuse program (Tr. 254, 264-265).

A March 2006 intake evaluation by Foote Affiliated Medical Practices indicates that Plaintiff reported fatigue, sinus problems, blurred vision, asthma, diarrhea, back pain, and depression (Tr. 242). Plaintiff acknowledged that he drank a pint of vodka daily "plus other alcoholic drinks" (Tr. 240-241). Anil Tibrewal, M.D., also noted that Plaintiff had Hepatitis C (Tr. 239, 325). Examination notes from the following month show that Plaintiff smelled of alcohol, acknowledging that he had a drinking problem (Tr. 235-236, 336-337). Plaintiff reported that he was currently homeless (Tr. 236).

In April 2006, Dr. Horace J. Davis completed an evaluation of Plaintiff, finding that as a result of neck, shoulder, and back pain, Plaintiff was limited to lifting less than 10 pounds on an occasional basis (Tr. 340). Dr. Davis found further that Plaintiff was precluded from all pushing and pulling and was limited to standing and/or walking two hours in an eight-hour workday (Tr. 340). May 2006 CT scans of the abdomen, pelvis, and chest produced negative results (Tr. 224). The same month, Ali A. Madani, M.D., Ph.D., stated that he "would not perform any non-lifesaving surgeries" on Plaintiff "unless he quits alcohol" which would improve his platelet count within "two to three weeks" (Tr. 233).

**2. Consultive and Non-examining Sources**

A Physical Residual Functional Capacity Assessment performed in April 2004 on behalf of the SSA found that Plaintiff retained the ability to lift 20 pounds occasionally and

10 pounds frequently; the ability to stand, walk, or sit for six hours in an eight-hour workday; and an unlimited ability to push and pull (Tr. 160). The Assessment limited Plaintiff to occasional climbing and *frequent* (as opposed to *constant*) balancing, stooping, kneeling, crouching, and crawling (Tr. 161). The Assessment found further that Plaintiff experienced reaching limitations, but noted an absence of visual or communicative limitations (Tr. 162-163). Plaintiff's environmental limitations consisted of avoidance of concentrated exposure to "fumes, odors, dust, gases, [and] poor ventilation" (Tr. 163). The Assessment concluded by stating that Plaintiff allegations of limitation were "partially credible" (Tr. 164).

The same month, a Psychiatric Review Technique ("PRT") completed by John S. Pai, M.D., on behalf of the SSA found that Plaintiff experienced alcohol dependence, but found that he experienced only mild restrictions in daily living, maintaining social functioning, and concentrational and/or pacing activities (Tr. 178). Dr. Pai noted that Plaintiff continued to fix simple meals, care for his cat, and perform housework (Tr. 179). He also noted that Plaintiff had been drinking at the time of an earlier evaluation (Tr. 179).

**C. VE Testimony**

VE Melody Henry classified Plaintiff's past relevant work as a machine operator as unskilled at the medium or very heavy exertional levels[1] (Tr. 374).

---

[1] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50

The ALJ then posed the following hypothetical question:

> "If we assume an individual who is limited to light work, but is unable to carry more than 15 pounds, would need to be able to sit hourly for about five to ten minutes, should not climb any ladders, ropes, or scaffolds, and only occasionally climb stairs, do any crouching, bending, or twisting. Only occasional overhead reaching with either upper extremity. No foot controls, and should avoid concentrated exposure to fumes, odors, dust, gasses, scents and chemicals and extreme heat. Would need simple, unskilled work where he could remain on task, but would not be able to perform the intense concentration needed for skilled work."

(Tr. 374-375).

The VE found that given the above limitations, Plaintiff would be unable to perform any of his former jobs but retained the capacity to perform the light, unskilled work of a cashier (7,800 jobs existing in the State of Michigan), rental clerk (2,000), counter clerk (2,100), office machine operator (1,100), and hand packer (2,750) (Tr. 375). She testified further that if Plaintiff were restricted to sedentary work he could perform the unskilled work of a cashier (5,200), records clerk (1,035), general office clerk (9,475), and production inspector (1,175) (Tr. 376). The VE found that if Plaintiff's allegations were fully credible, he would be unable to perform any of the above jobs due to his alleged need to nap three to four times a day (Tr. 376). The VE stated that her testimony was consistent with the Dictionary of Occupational Titles ("DOT") as well as the Standard Industrial Classification;

---

pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy work* requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

-8-

the Michigan Occupational and Information System; and her own education and work experience (Tr. 377).

**D. The ALJ's Decision**

ALJ Hartman found that although Plaintiff's asthma, right shoulder pain "secondary to rotator cuff tendonitis," degenerative disc disease, and "possible alcoholic cardiomyopathy" were "severe" impairments based on 20 C.F.R. § 404.1520(c), none of the conditions met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation 4 (Tr. 16).

The ALJ determined that although Plaintiff's exertional and non-exertional impairments prevented him from performing his past relevant work, he retained the residual functional capacity for "a range of light work," subject to the following limitations:

> "He is unable to carry more than fifteen pounds and he needs to sit hourly for about five to ten minutes. He should not climb any ladders, ropes, or scaffolds, and can only occasionally climb stairs. He can occasionally crouch, bend, and twist. The claimant should only occasionally reach overhead with either upper extremity. He cannot use foot controls. The claimant should avoid concentrated exposure to fumes, odors, dust, gases, scents, chemicals, and extreme heat. The claimant would need simple unskilled work where he could remain on task, but would not be able to perform intense concentration needed for skilled work"

(Tr. 19). Adopting the VE's job findings, the ALJ found that Plaintiff could perform the light and/or sedentary work of a cashier, rental clerk, counter clerk, office machine operator, and hand packer (Tr. 24).

The ALJ found Plaintiff's testimony "slightly exaggerated and only fairly credible" (Tr. 22). In support of her determination, the ALJ noted that Plaintiff continued to smoke

and drink contrary to the advice of his treating physicians (Tr. 220). The ALJ observed that Plaintiff smelled of alcohol during his hearing testimony (Tr. 22).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Treating Physician

Plaintiff argues first that the ALJ erred by rejecting Dr. Davis' April 2006 opinion that he was limited to lifting less than ten pounds on an occasional basis. *Plaintiff's Brief, Docket #8* at 13. Citing C.F.R. §404.1512(e), Plaintiff contends that instead of dismissing Dr. Davis' findings out of hand, the ALJ was required to seek additional medical records from the treating physician. *Id.* C.F.R. §404.1512(e) states in relevant part:

"*Recontacting medical sources.* When the evidence we receive from your

treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision."

However, "an Administrative Law Judge need recontact a medical source only if the evidence received from that source is inadequate for a disability determination." *DeBoard v. Commissioner of Social Sec.,* 2006 WL 3690637, *5 (6th Cir. 2006).

Plaintiff's argument that the ALJ erred by failing to re-contact Dr. Davis fails for multiple reasons. First, Dr. Davis' April 2006 finding of limitation makes reference to an examination by the treating physician, showing Plaintiff's weight and blood pressure readings (Tr. 339). Although an ALJ "acts as an examiner charged with developing the facts." *Lashley v. Secretary of Health and Human Services* 708 F.2d 1048, 1051 (C.A.Tenn.,1983); *Richardson v. Perales,* 402 U.S. 389, 411 91 S.Ct. 1420, 1432, 28 L.Ed.2d 842 (1971), "[a]bsent a gap in the record, the ALJ has no duty to recontact the physician." *Starkey v. Commissioner of Social Sec.,* 2008 WL 828861, *4 (W.D.Mich. 2008)(*citing Johnson v. Barnhart,* 138 Fed. Appx. 186, 189 (11th Cir.2005)). No such gap exists here. Included in the record is an intake examination performed just one month before Dr. Davis issued his opinion and imagining tests performed one month after (Tr. 224, 233, 330).

Further, Plaintiff's counsel claims in his reply brief that additional records by Dr. Davis exist, but offers no reason why the material was not submitted before the February 14, 2007 administrative decision or in Plaintiff's Appeals Council submission. *Docket #10* at 2. By itself, Plaintiff's failure to raise the §404.1512(e) issue before the Appeals Council defeats this argument. *Lance v. Commissioner of Social Sec.*, 1995 WL 723160, *1 (6th

Cir.1995); *Hix v. Director, OWCP,* 824 F.2d 526, 527 (6th Cir.1987)(An "issue not raised before the Appeals Council cannot be considered by the courts").

Most importantly, ALJ Hartman conducted a procedurally and substantively sound "treating physician analysis," finding that evidence found elsewhere in the record supports the non-disability finding.[2] I disagree with Plaintiff's additional argument that the ALJ erroneously found that Dr. Davis' findings were contradicted by the rest of the record. Plaintiff cites April 2004 imaging tests for the proposition that objective medical tests support the treating physician's opinion. *Plaintiff's Brief* at 14. Contrary to this contention, the April 2004 MRI's do not support Dr. Davis' finding of profound limitations. The MRI of Plaintiff's cervical spine showing "mild" abnormalities and a right shoulder MRI indicating "no evidence of rotator cuff tear" do not support Dr. Davis' finding of extreme limitations (Tr. 153, 154). Further, Dr. Davis' April 2006 opinion stands at odds with an intake evaluation performed one month earlier by Foote Affiliated Medical Practices, which, although finding the presence of back pain, shows an absence of joint pain, joint stiffness, muscle weakness, and walking difficulties (Tr. 330).

---

[2]The uncontradicted opinions of treating physicians are entitled to complete deference. *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 (FN 7)(6th Cir. 1991). In the presence of contradictory evidence that would allow the ALJ to accord less than controlling weight, the she must nonetheless consider the following factors: "the length of the . . . relationship and the frequency of examination, the nature and extent of the treatment, . . . [the] supportability of the opinion, consistency . . . with the record as a whole, and the specialization of the treating source." *Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004)(*citing* 20 C.F.R. § 404.1527(d)(2)).

Finally, I note that Plaintiff's contention that the ALJ omitted mention of Dr. Lerner's March 2004 findings from the administrative opinion is incorrect. *Plaintiff's Brief* at 15. In fact, the administrative opinion discusses both Dr. Lerner's treating notes from that time period (referred to as Exhibit 4F in the administrative opinion) and Plaintiff's March-April 2004 physical therapy notes (Tr. 21). Although Plaintiff also faults the ALJ for failing to make a specific reference to March 3, 2004 treatment notes, he cites no regulation or case law in support of the argument that the ALJ was required to discuss *all* of Dr. Lerner's findings.[3]

### B. Credibility

Next, Plaintiff contends that the ALJ did not support her reasons for finding his testimony only partially credible. *Plaintiff's Brief* at 16-17. Citing SSR 96-7p, he argues that the ALJ's failure to mention the observations of Warren White (Plaintiff's friend) constitutes reversible error. *Id.*

The credibility determination, guided by SSR 96-7p, describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *Id.* Second, SSR 96-7p directs that whenever a claimant's allegations regarding "the intensity, persistence, or functionally

---

[3] Moreover, as discussed in Section **B.**, *infra*, Dr. Lerner's findings were contradicted by Plaintiff's own testimony.

limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ must analyze his testimony "based on a consideration of the entire case record."

Here, the ALJ's credibility determination, well supported by substantial evidence, should remain undisturbed. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record.'" *Anderson v. Bowen* 868 F.2d 921, 927 (7th Cir. 1989)(*citing Imani v. Heckler,* 797 F.2d 508, 512 (7th Cir.1986)). Acknowledging that Plaintiff's respiratory and accident-related injuries caused limitations, the ALJ noted nonetheless that he had been treated conservatively with physical therapy and medication (Tr. 21). The ALJ also noted that Plaintiff reported improvement following physical therapy (Tr. 21). The ALJ permissively noted that her credibility determination was also based on Plaintiff's "demeanor as a witness" (Tr. 22). *See Anderson, supra.*

More significantly, the ALJ observed that Plaintiff's claim of disability as a result of asthma was undermined by his continued use of tobacco - even after being advised to quit by his treating sources (Tr. 22). *See Sias v. Secretary of Health and Human Services,* 861 F.2d 475, 480 (6th Cir. 1988)(Credibility determination permissively took into account that the claimant ignored his physician's advice to give up smoking). Likewise, the ALJ's determination that Plaintiff's alcohol abuse exacerbated his physical problems is supported by overwhelming record evidence (Tr. 22, 95, 208, 254, 233, 235-236). *See Eversole v. Astrue,* 2008 WL 45400, *7 (E.D. Ky. 2008)("the claimant's . . . non-compliance with

treatment advice (e.g. binge drinking after a diagnosis of diabetes and continued smoking despite oxygen therapy) significantly erodes his credibility.")

Further, although Plaintiff faults the ALJ for omitting discussion of Warren White's third party assessment, the ALJ was not required to discuss every piece of evidence supporting Plaintiff's disability claim in light of substantial evidence supporting the opposite conclusion (Tr. 72-77). "While it might be ideal for an ALJ to articulate his reasons for crediting or discrediting each . . . opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Commissioner of Social Security,* 2006 WL 305648, *8-9 (6th Cir. 2006)(*citing Loral Defense Systems-Akron v. N.L.R.B.,* 200 F.3d 436, 453 (6th Cir.1999)).

In closing, the finding that the ALJ's determination should be upheld is not intended to trivialize Plaintiff's legitimate impairments as a result of pulmonary, back, and shoulder problems. However, based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level pursuant to *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6${}^{th}$ Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6${}^{th}$ Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6${}^{th}$ Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6${}^{th}$ Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen  
R. STEVEN WHALEN  
UNITED STATES MAGISTRATE JUDGE

Dated: September 25, 2008

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on September 25, 2008.

s/Susan Jefferson

Case Manager